UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/17/2024

---------------------------------------------------------------X

RAMON L. GONZALEZ,

                Plaintiff,

           -against-

THE KENAN ADVANTAGE GROUP, INC., a/k/a
KAG MERCHANT GAS GROUP LLC and "JOHN DOE"

                Defendants.

---------------------------------------------------------------X

No. 1:22-cv-10962 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

### Background

This motor vehicle accident case was originally filed in Supreme Court, Bronx County, and was removed to this court on December 29, 2022. Defendant has moved for summary judgment dismissing the complaint. The motion is granted in part and denied in part.

### I.  Statement of Facts

Plaintiff Ramon L. Gonzalez and non-party Kevin Bush were in a low speed motor vehicle accident on May 12, 2022. Mem. of L., 1, February 15, 2024. Mr. Gonzalez drove a minivan, and Mr. Bush drove a truck with a tractor trailer. *Id.* Mr. Bush drove the tractor trailer in his capacity as employee for defendant The Kenan Advantage Group, Inc., a/k/a KAG Merchant Group LLC ("Kenan"). *Id.*; Bush Dep., 9:16-23, November 20, 2023. Mr. Gonzalez was deposed on August 29, 2023, and Mr. Bush was deposed on November 20, 2023. Mem. of L. 1.

1

Mr. Bush testified that he drove on Webster Avenue, a two-way street with two lanes of travel in each direction. *Id.* Mr. Bush drove in the left lane for three blocks and planned to turn left onto the Cross Bronx Expressway. *Id.* Mr. Gonzalez drove in the left lane coming in the opposite direction. *Id.* at 2. He was in the crosswalk when Mr. Bush turned left. *Id.* As Mr. Bush turned left, the driver's side of the trailer hit the driver's side of the minivan. *Id.*

Mr. Gonzalez was driving less than five miles per hour. *Id.* at 3. Mr. Bush reached a maximum speed between six and nine miles per hour on the turn. Lynch Aff., ¶22, February 12, 2024. The trailer "started spinning [Mr. Gonzalez's] car and the glass burst in the windows." Gonzalez Dep., 29:19-22, August 29, 2023. The impact "almost flipped" the minivan, and the truck pushed the minivan three feet to the right. *Id.* at 37:21-24, 38:11-21. Mr. Gonzalez was wearing his seatbelt at the time of the accident. Mem. of L. 2. The airbags did not deploy. Defs.' Rule 56.1 Statement, ¶12, February 15, 2024.

Upon impact, Mr. Gonzalez's "'neck and [his body] moved back against the seat.'" Mem. of L. 4. His body did not hit the steering wheel. *Id.* Mr. Gonzalez did not take the ambulance called to the scene because "[he] felt fine at the time." Gonzalez Dep. 74:21-24. He sought medical attention the day after the accident because he started to feel pain then. *Id.* at 56:11-13; 74:24-25.

Mr. Gonzalez claimed that he suffered cervical and lumbar injuries and underwent numerous resulting medical procedures:

> With respect to the physical injuries being claimed, those include, among other things, cervical disc bulges and herniations; surgery on October 24, 2022 (cervical discectomy at C4/C5; cervical discectomy at C5/C6; and fluoroscopy); and cervical fusion on June 15th, 2023, including hemivertebrectomy C5, hemivertebrectomy C6, hemivertebrectomy C7, anterior discectomy 5/6, additional levels 6/7, intervertebral implant "X2", arthrodesis C5/6, additional levels C6/7, bone graft, anterior instrumentation placement at C5/6/7, and fluoroscopy.
>
> The plaintiff also claimed the following with respect to the lumbar spine: straightening of the lumbar spine; L4-L5 broad-based disc herniation resulting in

2

compression upon the ventral thecal sac, impingement of exiting nerve roots; L5-S1 broad-based disc herniations resulting in compression upon the ventral thecal sac; impingement of exiting nerve roots; L4-L5 radiculopathy; trigger point injections with ultrasound guidance (May 17, 2022, June 30, 2022, August 4, 2022, September 19, 2022 and October 17, 2022); and on November 7, 2022: lumbar discectomy at L4/L5; fluoroscopy; and annuloplasty at L4/L5.

Mem. of L. 12. He denied having any prior history of injuries or problems to his neck or back. Bazos. Aff., ¶26, February 2, 2024.

After the accident, Mr. Gonzalez sought medical attention for pain several times. *Id.* ¶¶8-23. On May 17, 2022, and June 30, 2022, Mr. Gonzalez was diagnosed with myofascial pain syndrome. *Id.* ¶¶8, 11. On July 30, 2022, Mr. Gonzalez underwent a CT scan of his right knee and his left hip due to pain. *Id.* ¶¶6, 12, 13. On August 19, 2022, Mr. Gonzalez sought medical attention due to right knee pain, which he attributed to the May 12, 2022 accident and described as an 8 to 10 out of 10 in severity. *Id.* ¶17. Although there was tenderness along the anterior medial joint line of the right knee, Mr. Gonzalez declined right knee arthroscopic surgery. *Id.* On August 22, 2022, Mr. Gonzalez sought medical attention for neck and lower back pain. *Id.* ¶18. Mr. Gonzalez had decreased cervical and lumbar range of motion with tenderness to palpation of the paracervical and paralumbar musculature. *Id.* The lumbar range of motion was limited with pain and stiffness. *Id.* Mr. Gonzalez was diagnosed with multilevel bulging discs and herniated discs in the cervical spine and lumbar spine with radiculopathy, and cervical and lumbar epidural injections were recommended. *Id.* On October 3, 2022, Mr. Gonzalez sought medical attention for back and neck pain, which he attributed to the May 12, 2022 accident. *Id.* ¶20. He rated the pain an 8 out of 10 in severity and noted that the pain extended to his shoulders and buttocks. *Id.* There was decreased cervical and lumbar range of motion with tenderness to palpation of the paracervical and paralumbar musculature. *Id.* He was diagnosed with diagnosed with cervical and lumbar radiculopathy and advised to continue with physical therapy. *Id.*

3

Mr. Gonzalez personally repaired the minivan's door, bumper, and fender three weeks after the accident. Mem. of L. 4. He also personally installed a pipe for support in his bathroom. *Id.*; Gonzalez Dep. 70:14-16. He can comb his hair, brush his teeth, and drive. Mem. of L. 4. He can go food shopping, although he can only buy small items. Gonzalez Dep. 71:24-25, 72:1-7. He can walk and run. Mem. of L. 4. Mr. Gonzalez also testified that, before the accident, he could stand without needing rest; now, he must rest after standing for two hours. Gonzalez Dep. 75:10-17. Additionally, Mr. Gonzalez testified that, before the accident, he could walk eight to ten blocks at a time without experiencing any pain or difficulties; now, he can walk only two blocks before experiencing pain or difficulty. *Id.* at 74:7-10, 75:18-20.

Mr. Gonzalez last had full time employment in 2000. Mem. of L. 5. He suffered a stroke in 2000; since then, he has been disabled and has received Social Security and Health First. *Id.* Mr. Gonzalez did not pay out of pocket for any medical treatment since the accident. *Id.*

A. *Kenan's Experts*

Kenan offered three expert affidavits. Mem. of L. 6. Mr. Robert T. Lynch, P.E. is a licensed professional engineer. Lynch Aff. ¶1. Dr. Robert J. Nobilini is a biomechanical expert. Mem. of L. 6; Nobilini Aff., ¶1, February 12, 2024. Dr. Andrew N. Bazos is a board-certified orthopedist who reviewed Mr. Gonzalez's medical records and performed a physical examination of Mr. Gonzalez on October 19, 2023. Bazos Aff. ¶¶2, 5. Their findings are summarized below.

Based on a series of tests, Mr. Lynch found that the minivan experienced an average acceleration of less than 1.0g and noted that 1.0g is the acceleration due to gravity. Mem. of L. 6.

Dr. Nobilini made three findings. *Id.* One, the accelerations Mr. Gonzalez experienced during the accident were normally experienced every day during non-injurious activities of daily living and were not consistent with the injuries claimed. *Id.* Two, no mechanisms in the accident

4

could explain the injuries claimed. *Id.* Three, the dynamics of the accident were not consistent with the injuries claimed. *Id.*

Dr. Bazos performed a range of motion test using a goniometer and found that Mr. Gonzalez has a normal range of motion in his spine, shoulders, elbows, hips, hands, and knees. *Id.* at 6, 13. Dr. Bazos also determined that Mr. Gonzalez had a "pre-existing multi-level degenerative disc disease due to aging", Mr. Gonzalez underwent unnecessary medical procedures, Mr. Gonzalez's "straight leg 'raise was negative on both sides at 90 degrees'", and Mr. Gonzalez had fully recovered. *Id.* Dr. Bazos stated:

> The plaintiff sustained at most minor, self-limited, soft tissue strain injuries to the cervical spine and lumbar spine. These injuries would have resolved fully within just a few weeks with conservative management, based on established biologic properties. There were no injuries to the plaintiff's right knee or left hip at the time of the subject accident and none of the treatment provided to those regions was medically necessary as a result of the accident in question. The cervical and lumbar discectomies (October-November 2022) and cervical fusion procedure (June 2023) were not medically necessary as a result of the subject accident. The plaintiff's injuries have resolved completely and he requires no additional medical treatment. He is left with no disability or limitations in performing his normal daily activities.

*Id.* at 6. Dr. Bazos also concluded that "any proposed injury [Mr. Gonzalez] may have sustained is based solely on his history and subjective complaints alone due to the lack of any accident-related objective findings." Bazos Aff. ¶39.

B. *Mr. Gonzalez's Expert*

Attached to Mr. Gonzalez's affirmation in opposition to the motion for summary judgment was a narrative report prepared by his treating physician, Dr. Sebastian Lattuga. Affirmation in Opp'n., Ex. B, July 1, 2024. Dr. Lattuga was first identified as a potential witness in Mr. Gonzalez's First Supplemental Rule 26(a)(1) Disclosure, filed on July 27, 2023. Def. Reply, Ex. B, July 12, 2024. In Mr. Gonzalez's Notice of Expert Witnesses filed on March 15, 2024, Mr. Gonzalez disclosed, in relevant part:

5

Medical expert, Sebastian Lattuga, M.D., who is expected to testify in accord with the [operation summary dated June 15, 2023 and chart entry dated June 5, 2023], who will address, inter alia, medical history, liability, damages, physical examinations of the plaintiff treatment and surgeries of the plaintiff injuries, radiological studies, physical examination findings and causation.

[The operation summary and chart entry] contain a complete statement of the opinions he will express and the bases and reasons therefore, the facts or data considered by the witness in forming them, to wit, litigation materials, *medical records*, discussions with the plaintiff and the results of his physical examinations of the plaintiff.

*Id.*, Ex. C. (emphasis added).

In his narrative report, to which he swore under penalty of perjury,[1] Dr. Lattuga offered opinions based on a number of entries from Mr. Gonzalez's medical records, specifically those dated June 5, 2023, July 17, 2023, September 6, 2023, October 18, 2023, November 29, 2023, March 27, 2024, and April 3, 2024. Affirmation in Opp'n., Ex. B. Obviously, some of the entries to which Dr. Lattuga referred are based on follow-up visits that occurred after the Notice of Expert Witnesses was filed, while others occurred before or after Dr. Lattuga was identified but prior to the filing of the Notice of Expert Witnesses. *Id.* Among his opinions was one about causation. *Id.*

As detailed in the narrative report, Dr. Lattuga performed range of motion tests using a goniometer on Mr. Gonzalez on June 5, 2023, and April 3, 2024. *Id.* ¶¶9-13. During both examinations, Dr. Lattuga found that Mr. Gonzalez lost various ranges of motion in his cervical spine and lumber spine, and the losses ranged from 16.7% to 96%. *Id.* ¶¶9-10, 14. Dr. Lattuga stated that his findings were consistent with CT diagnostic results from August 6, 2022, which showed herniated discs at C4-C7 levels, disc bulges at C2-C4 levels, and disc herniations at L4-

---

[1] N.Y. C.P.L.R. § 2106 permits statements affirmed by a health care practitioner licensed to practice in New York to be "served or filed in the action in lieu of and with the same force and effect as an affidavit" when they are affirmed "under penalty of perjury." N.Y. C.P.L.R. § 2106 (McKinney); *Lubrano v. Papandreou*, 262 A.D.2d 457, 457–58, 692 N.Y.S.2d 153, 153 (2d Dep't 1999). 28 U.S.C. § 1746 similarly permits unsworn statements to carry the same effect as affidavits when they are both signed "under penalty of perjury" and dated. 28 U.S.C.A. § 1746 (West); *Cianciosi v. Home Depot U.S.A., Inc.*, 199 F.3d 1321 (2d Cir. 1999).

L5/S1 levels, and his personal observations during examinations. *Id.* ¶12. He stated that, based on

Mr. Gonzalez's medical history, the objective testing, including the range of motion tests, and the

CT scans, Mr. Gonzalez's injuries were causally related to the May 12, 2022 accident. *Id.*, Ex. B.

Dr. Lattuga also opined that Mr. Gonzalez "will require diagnostic imaging, physical therapy, pain

management and may require additional procedures in the future." *Id.*

## II.    Procedural History

On November 14, 2022, Mr. Gonzalez filed a complaint against Kenan in the Supreme

Court of the State of New York, Bronx County, seeking to recover money damages for personal

injuries arising from the accident. Pet. for Removal, Ex. A, December 29, 2022, ECF No. 1-1. He

claimed that he suffered a "serious injury" as defined in § 5102 of the Insurance Law of the State

of New York. Am. Compl., ¶54, January 11, 2023. Mr. Gonzalez claimed that as "a covered person

claiming against a covered person, [he] is entitled to recover for non-economic loss, including

pain, suffering, disfigurement and disability . . . [He] is entitled to recover for such economic loss

as exceeds basic economic loss." *Id.* Mr. Gonzalez asserts two claims against Kenan: (1) negligent

hiring, retention and training and (2) negligence. *Id.* ¶¶68-82.

On December 29, 2022, Kenan removed this case to the Southern District of New York on

the basis of diversity. Notice of Removal, December 29, 2022, ECF No. 1. Mr. Gonzalez resides

in New York, County of Bronx, and Kenan is a Delaware business entity with its principal place

of business in Ohio. Pet. for Removal ¶¶6, 7.

## Discussion

## I.    Legal Standard for Summary Judgment

The Court has articulated the legal standard for summary judgment, which applies in this

case:

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" "if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "Uncertainty as to the true state of any material fact defeats the motion." *U.S. v. One Tintoretto Painting Entitled The Holy Fam. With Saint Catherine & Honored Donor*, 691 F.2d 603, 606 (2d Cir. 1982).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). "Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor." *United Specialty Ins. Co. v. JD Com. Builders Inc.*, No. 18-cv-6735 (CM), 2020 WL 49017661, at *3 (S.D.N.Y. Aug. 20, 2020).

*New Hampshire Ins. Co. v. Travelers Indem. Co.*, No. 22-CV-05968 (CM)(GS), 2024 WL 1484191, at *4–5 (S.D.N.Y. Apr. 5, 2024).

In the Southern District of New York, on a motion for summary judgement, both the movant and nonmovant are required to file Rule 56.1 Statements to establish material facts. Local Rule 56.1. The facts in the movant's statement can be deemed admitted when the nonmovant fails to file its own statement. *Id.*; *See, e.g.*, *Suares v. Cityscape Tours, Ltd.*, 603 Fed. Appx. 16, 18 (2d Cir. 2015).

Mr. Gonzalez failed to file a Rule 56.1 Counterstatement. While the Court could choose to deem all of Kenan's facts admitted–and while it seems quite clear that most of the statements in Kenan's Rule 56.1 Statement are not contested—the entire record reveals that Kenan's allegations

8

of fact insofar as the facts relate to the nature of Mr. Gonzalez's injuries and their cause are hotly contested. Accordingly, I will deem the facts in Statements 1-21 (assertions about the accident itself) and Statements 22-24 and 27-33 (assertions that Mr. Gonzalez underwent various procedures and examinations, and the conclusions reached by the doctors who performed those procedures and examinations) admitted.

However, the Court is not going to pretend that Mr. Gonzalez has failed to contest Statements 25, 26, and 34-39, despite his counsel's not having filed his own Rule 56.1 Counterstatement. As supported by Dr. Lattuga's narrative report and other evidence in the record, Mr. Gonzalez obviously contests Kenan's assertions that the accident did not cause his injury and that he did not suffer a "serious injury" within the meaning of the law. I further note that some of these purported statements of fact are ultimate facts or are issue of law (*see*, *e.g.*, Statements 38 and 39), which are not amenable to being "admitted" by virtue of not filing a Rule 56.1 Counterstatement.

Kenan argues that Dr. Lattuga's sworn statement cannot be relied on to raise genuine issues of fact about the nature and cause of Mr. Gonzalez's injuries because that narrative report refers to medical records that were not previously disclosed to Kenan. Def. Reply 2.[2]

There are several reasons why this argument fails.

For purposes of Fed R. Civ. P. 26, a treating physician like Dr. Lattuga, as opposed to a "gun for hire" expert who did not participate in the plaintiff's treatment, is not required to provide a written expert report. Disclosure about a treating physician's testimony "must state the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and a summary of the facts and opinions to which the witness is expected to testify."

---

[2] The specific records include those dated July 17, 2023, September 6, 2023, October 18, 2023, November 29, 2023, March 27, 2024, and April 3, 2024.

Fed. R. Civ. P. 26. "[T]reating physicians are 'permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but *solely* as to the information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician limited to the facts in Plaintiff's course of treatment.'" *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013) (quoting *Spencer v. Int'l Shoppes, Inc.*, No. CV 06-2637 AKT, 2011 WL 4383046, at *4 (E.D.N.Y. Sept. 20, 2011)).

The Notice of Expert Witnesses sufficiently discloses the substance of Dr. Lattuga's testimony and the bases upon which it rests. While the only records specifically mentioned in this Notice are the June 5, 2023 chart entry and the June 15, 2023 operation summary, the Notice indicates that Dr. Lattuga will rely on Mr. Gonzalez's "medical records." This would necessarily include any such records that exist, including the chart entries dated July 17, 2023, September 6, 2023, October 18, 2023, November 29, 2023, March 27, 2024, and April 3, 2024. These are records that Dr. Lattuga either created or that came to his attention during the course of his treatment of Mr. Gonzalez. As long as Dr. Lattuga created or became familiar with medical records in the course of his treatment of Mr. Gonzalez, he will be permitted to testify about them. If they really have not been disclosed to Kenan, they should be immediately.

I also note that it would be inappropriate to exclude Dr. Lattuga's evidence in connection with the consideration of this motion because Kenan, for whatever reason, chose to bring a motion for summary judgment prior to the conclusion of discovery in this case. By stipulation of the parties, expert discovery is not over and will not be over until August 23, 2024. ECF 45, May 17, 2024. It would thus be premature to grant a motion for summary judgment on the ground that expert disclosure was inadequate, since there is plenty of time for plaintiff to cure any

10

deficiencies—including to provide any medical records that were previously not disclosed, and to examine Dr. Lattuga about them.

Finally, as long as Dr. Lattuga's opinion about causation derives from his treatment of Mr. Gonzalez and the information he obtained during the course thereof, he can testify about causation.

Thus, Statements 25, 26, and 34-39 are not deemed admitted.

That being said, I caution counsel for Mr. Gonzalez to become familiar with and to follow the local rules when opposing a motion for summary judgment. She cannot count on a similar result if she fails to file a Rule 56.1 Counterstatement on behalf of a future client.

## I.  Kenan's Motion for Summary Judgment Dismissing the Negligent Hiring, Training and Retention Claim is Granted

Mr. Gonzalez's negligent hiring, training and retention claim cannot proceed as a matter of law and so is properly dismissed on a motion for summary judgment.

A negligent hiring, training and retention claim "requires the employer to answer for a tort committed by an employee against a third person 'when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm.'" *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875, 878 (2d Dep't 2006) (quoting *Kirkman v Astoria Gen. Hosp.*, 204 A.D.2d 401, 403 (2d Dep't 1994)). In these claims, the employer's negligence is direct and not vicarious. *Sheila C. v. Povich* 11 A.D.3d 120, 129 (1st Dep't 2004). "Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention." *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27 (1st Dep't 1997) (citations omitted). Negligent hiring, training and retention claims proceed "only if the employee was acting outside the scope of their employment when they

11

committed the tort." *Ki v. City of New York*, 2021 WL 4902538, at *5 (E.D.N.Y. 2021) (citing *Ahluwalia v. St. George's Univ., LLC*, 63 F.Supp.3d 251, 263-64 (E.D.N.Y. 2014)). "[A]n exception exists to this general principle where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee." *Karoon*, 241 A.D.2d at 324 (citing *Bevilacqua v. City of Niagara Falls*, 66 A.D.2d 988, 989 (4th Dep't 1973); *Mastrodonato v. Chili*, 39 A.D.2d 824, 825 (4th Dep't 1972)).

There is no dispute that Mr. Bush was acting within the scope of his employment when he hit Mr. Gonzalez's minivan. Thus, Kenan can be liable for damages only under a theory of respondeat superior, which necessarily excludes damages under a theory of negligent hiring, training and retention. Mr. Gonzalez is not seeking punitive damages from Kenan based on gross negligence in the hiring and retention of Mr. Bush, so the exception to this rule does not apply. Thus, the Court grants Kenan's motion for summary judgment on the negligent hiring, training and retention claim.

## II.    Kenan's Motion to Dismiss Mr. Gonzalez's Negligence Claim is Granted in Part and Denied in Part

A. *New York Insurance Law*

In New York, to establish a prima facie case of negligence, a plaintiff must show "'(1) the existence of a duty . . . ; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531, 535 (1981)).

Additionally, under the no-fault approach in New York, the plaintiff must show that he either sustained "basic economic loss" or that he suffered a "serious injury." N.Y. Ins. Law § 5104(a) (McKinney). The purpose of the no-fault approach is to "'to weed out frivolous claims and limit recovery to significant injuries.'" *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345,

12

350, 774 N.E.2d 1197, 1199 (2002) (quoting *Dufel v. Green,* 84 N.Y.2d 795, 798, 622 N.Y.S.2d 900, 647 N.E.2d 105 (1995)).

A plaintiff can recover "basic economic loss," which is economic loss that exceeds fifty thousand dollars and includes lost wages, medical expenses, as well as "other reasonable and necessary expenses" of up to twenty-five dollars per day not exceeding a year after the accident. N.Y. Ins. Law § 5102(a) (McKinney). "If Plaintiff fails to [show that he sustained 'basic economic loss'], then Defendant is entitled to summary judgment barring any such recovery." *Comba v. United States,* 535 F. Supp. 3d 97, 107 (E.D.N.Y. 2021) (citations omitted).

Even if a plaintiff has not suffered "basic economic loss," he can still recover damages under the no-fault approach if he suffered a "serious injury." *Williams v. Elzy,* No. 00 CIV. 5382 (HBP), 2003 WL 22208349, at *3 (S.D.N.Y. Sept. 23, 2003) ("Plaintiff has not submitted any evidence to indicate that she is seeking damages for economic loss greater than 'basic' economic loss . . . Thus, the damages sought by plaintiff are exclusively for 'non-economic' loss . . . ."). Accordingly, to prevail on a claim for non-economic loss arising out of personal injuries from a motor vehicle accident, a plaintiff must establish that he suffered a "serious injury" and that his injury was caused by the accident. *Flores v. Bergtraum,* No. 22-260-CV, 2023 WL 3047968, at *1 (2d Cir. Apr. 24, 2023).

New York defines a "serious injury" as follows:

a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

13

N.Y. Ins. Law § 5102(d) (McKinney). "To qualify as a 'serious injury,' . . . plaintiff must demonstrate that []he falls into *one* of the nine statutory categories." *Morrone v. McJunkin*, No. 98 CIV. 2163 (DLC), 1998 WL 872419, at *2 (S.D.N.Y. Dec. 15, 1998) (emphasis added).

Courts can determine whether a plaintiff has suffered a "serious injury" on a motion for summary judgment. *Booth v. Melville*, No. 14 CIV. 7022 (CM), 2015 WL 7730931, at *7 (S.D.N.Y. Nov. 24, 2015) ("[W]hether a plaintiff suffered a serious injury is not always a fact question for the jury, and that a court should decide the threshold question of whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy."). If there is a genuine issue of fact on the issue, it goes to the jury at trial.

The New York Court of Appeals has directed courts, including federal courts sitting in diversity, to employ a burden-shifting framework to determine whether a plaintiff has suffered a "serious injury" on a motion for summary judgment:

> [A] defendant must establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits. Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that []he sustained a serious injury. For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

*Ziegenfus v. John Veriha Trucking*, No. 10 CIV. 5946 RJS, 2012 WL 1075841, at *4 (S.D.N.Y. Mar. 28, 2012) (quoting *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010)). To meet his burden, the plaintiff must show "objective proof" that he suffered a "serious injury;" "subjective complaints alone are not sufficient." *Toure*, 98 N.Y.2d at 350 (citations omitted).

14

B. *Defendant's Motion for Summary Judgment is Granted on the Issue of Basic Economic Loss*

Kenan argues that Mr. Gonzalez cannot recover for basic economic loss because he has not worked since 2000 and has not paid for any medical expenses out of pocket. Mem. of L. 10. Mr. Gonzalez effectively concedes as much by not disputing (or even addressing) Kenan's arguments in his response papers. Thus, Mr. Gonzalez cannot recover for basic economic loss. *See, e.g.*, *Comba*, 535 F. Supp. 3d at 107 ("Plaintiff's opposition brief is silent on economic loss . . . Defendant is therefore entitled to summary judgment on this issue . . . ."); *Mastrantuono v. United States*, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001) (excluding damages under basic economic loss when "[plaintiff] did not submit any documentary proof that her basic economic loss exceeded $50,0000. [Plaintiff] has not paid for any medical treatment to date . . . and [plaintiff] proffered no evidence as to what future medical treatment could cost."); *Rhone*, 2007 WL 3340836, at *10 (granting defendant summary judgment on the issue of basic economic loss when "[plaintiff] fail[ed] to address the [defendant's] economic loss argument. [Plaintiff] does not offer any evidence that his economic loss was in excess of $50,000 and he does not oppose the [defendant's] motion on this ground.").

C. *Disputed Issues and Facts Preclude Summary Judgment Dismissing Mr. Gonzalez's Negligence Claim*

1. *Serious Injury*

A court can grant summary judgment on the issue as to whether the plaintiff suffered a "serious injury" in one category while denying summary judgment when a genuine dispute arises as to whether the plaintiff sustained a "serious injury" in another category. *See, e.g.*, *Williams*, 2003 WL 22208349, at *10 (granting defendant's motion for summary judgment on the issue of whether the plaintiff suffered an injury based on the "permanent consequential limitation" category but denying it on whether the plaintiff sustained an injury under the "significant limitation" and

15

"90/180 day" categories); *Pezzino v. Woodruff*, 103 A.D.3d 944, 945, 959 N.Y.S.2d 564, 566 (3d Dep't 2013) (reversing the grant of defendant's motion for summary judgment on the issue of whether plaintiff sustained an injury on the "90/180 day" category and affirming the grant of summary judgment on the claims that the plaintiff suffered a "permanent consequential limitation" or "significant limitation").

In this case, while Kenan has met its burden of going forward on the issue of serious injury, genuine issues of fact preclude granting summary judgment on the issue at this juncture.

Mr. Gonzalez did not suffer death, dismemberment, significant disfigurement, a fracture, or loss of a fetus. Mr. Gonzalez suffered a "serious injury" only if it is falls within the three remaining categories: (1) permanent consequential limitation of use of a body organ or member; (2) significant limitation of use of a body function or system; or (3) a medically determined injury or impairment of a nonpermanent nature which prevented Plaintiff from performing *substantially all* of the material acts which constituted her usual and customary daily activities for no less than 90 days during the 180 days immediately following the injury or impairment (the "90/180 day" category). N.Y. Ins. Law § 5102(d) (McKinney) (emphasis added).

Within the context of "permanent consequential limitation," "permanent" "requires proof of limited operation or persistent pain," and "consequential" means "important or significant." *Cole v. Allied Waste Indus., Inc.*, 496 F. Supp. 2d 257, 261 (S.D.N.Y. 2007) (citing *Countermine v. Galka*, 189 A.D.2d 1043, 1045, 593 N.Y.S.2d 113 (3d Dep't 1993)). To be a "significant limitation," an injury must be more than a "'minor, mild or slight limitation of use.'" *Id*. (quoting *Licari v. Elliott*, 57 N.Y.2d 230, 236, 441 N.E.2d 1088 (1982))). An expert's quantitative assessment, including the form of percentage of loss of range of motion, can establish whether a plaintiff's injuries are permanent or significant. *Toure*, 98 N.Y.2d at 353. "While there is no set

percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of [20%] or more is significant . . . . [L]ess than 20% limitation has been found insufficient to survive a motion for summary judgment." *Alim v. United States*, No. 21-CV-2234 (LJL), 2023 WL 2929380, at *21 (S.D.N.Y. Apr. 13, 2023) (quoting *Hodder v. United States*, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (collecting cases)). Expert testimony that establishes that the plaintiff's injuries have been resolved and that the plaintiff has regained full range of motion can demonstrate that the injuries are neither permanent nor significant. *Thompson v. Ramnarine*, 40 A.D.3d 360, 361, 835 N.Y.S.2d 566 (1st Dep't 2007); *Porter v. Bajana*, 82 A.D.3d 488, 918 N.Y.S.2d 414, 415 (1st Dep't 2011).

Kenan met its burden to demonstrate that Mr. Gonzalez did not suffer a "serious injury" in any of the three categories. Kenan provides a sworn affidavit from Dr. Bazos. Dr. Bazos found that Mr. Gonzalez could have suffered "minor, self-limited, soft tissue strain injuries" as a result of the accident. Bazos Aff. ¶38. While Mr. Gonzalez has repeatedly sought medical attention for pain after the accident, and has been diagnosed with a plethora of injuries (including, among others, myofascial pain syndrome, radiculopathy, herniated discs, and bulging discs. *Id*. ¶¶8-20.), Dr. Bazos opined that Mr. Gonzalez is fully recovered and "is left with no disability or limitations in performing his normal daily activities." *Id*. ¶45. Dr. Bazos also determined that Mr. Gonzalez has a normal range of motion in his spine, shoulders, elbows, hips, hands, and knees. Mem. of L. 13. Dr. Bazos opined that Mr. Gonzalez does not require any additional medical treatment. Bazos. Aff. ¶45.

Dr. Bazos's statements are supported by Mr. Gonzalez's own admissions, which show that he could perform many of his daily activities. Mr. Gonzalez did not seek medical attention the day of the accident. Gonzalez Dep. 74:21-24. Mr. Gonzalez stated that he can comb his hair, brush his

17

teeth, drive, go grocery shopping, walk, and run. Mem. of L. 4. He repaired the van himself three weeks after the accident. *Id*. He also installed a pipe for support in his bathroom. *Id.;* Gonzalez Dep. 70:14-16.

However, Mr. Gonzalez has made out a prima facie case that he suffered a "serious injury" under the "permanent consequential limitation" and "significant limitation" categories, but not under the "90/180 day" category.

Dr. Lattuga's narrative report can be considered on this motion for summary judgment. It states in relevant part on the last page, "I Sebastian Lattuga, M.D., being duly licensed to practice medicine in the State of New York, hereby affirms under penalties of perjury and pursuant to CPLR 2106, that the foregoing statements are true and accurate to be the best of my knowledge and information." Affirmation in Opp'n, Ex. B. Whether under N.Y. C.P.L.R. § 2106 or 28 U.S.C. § 1746, the report carries the effect of an affidavit admissible for a motion for summary judgment on the issue of whether a plaintiff suffered a "serious injury." *See, e.g., Williams*, 2003 WL 22208349, at *5 ("[T]he chiropractor's affirmation provides 'Dr. Louis R. Beato, affirms the following under penalty of perjury as follows. . . .' This language is sufficiently similar to the language prescribed in Section 1746, and is sufficient to render Dr. Beato's affirmation admissible as an affidavit."); *Bissell v. Town of Amherst*, 41 A.D.3d 1228, 1229, 837 N.Y.S.2d 469, 470 (4d Dep't 2007), *leave to appeal denied*, 14 N.Y.3d 703, 898 N.Y.S.2d 99, 925 N.E.2d 104 ("[T]he reports of the two physicians, affirmed under the penalty of perjury, constitute evidence in admissible form [under N.Y. C.P.L.R. § 2106].")

Dr. Lattuga opined that Mr. Gonzalez has restricted ranges of motion, which range from 16.7% to 96%, in his cervical and lumber spine. Affirmation in Opp'n. ¶¶ 9, 10, 14. CT diagnostic results confirm Mr. Gonzalez's injuries, including disc bulges and disc herniations. *Id.* ¶12. The

18

measured losses in range of motion and the CT diagnostic results are "objective proof" that Mr. Gonzalez suffered a "serious injury." *See, e.g., Rivera v. United States*, No. 10 CIV. 5767 MHD, 2012 WL 3132667, at \*24 (S.D.N.Y. July 31, 2012) ("Based on the results of objective medical testing—including range-of-motion tests, MRIs reflecting disc herniations and disc bulge, and positive Spurling maneuver tests—and plaintiff's continued complaints of pain and limited functionality, we find that plaintiff's proffer sufficiently raises a question of fact as to whether she has suffered a 'serious injury' under New York Insurance Law."); *Davis v. Alnhmi*, 96 A.D.3d 507, 508, 946 N.Y.S.2d 163, 164 (1st Dep't 2012) ("[Plaintiff] raised an issue of fact by submitting affirmed MRI reports showing disc herniation at L5–S1 and multiple cervical disc bulges, an affirmed EMG report revealing radiculopathy, and an affirmation by her treating orthopedist, who repeatedly and recently measured her diminished ranges of motion.").

However, Mr. Gonzalez failed to establish a prima facie case that he suffered a "serious injury" in the "90/180 day" category. Mr. Gonzalez's opposition lacked any argument that his injuries prevented him from engaging in "substantially all of the material acts which constituted his usual and customary daily activities." N.Y. Ins. Law § 5102(d) (McKinney). Thus, the Court grants Kenan's motion on summary judgment to the extent that Mr. Gonzalez alleges that he suffered a "serious injury" within the "90/180 day" category. *See Welch v. Ayala*, No. 19 CIV. 3455 (NRB), 2023 WL 5387551, at \*15 (S.D.N.Y. Aug. 22, 2023) ("The only limitations plaintiff presents are those described in his affidavit . . . and such 'self-serving statements' alone are again wholly insufficient to establish an issue of fact." *Rivera*, 2012 WL 3132667, at \*12; *accord Lemieux v. Horn*, 209 A.D.3d 1100, 1101 (3d Dep't 2022), *aff'd*, 39 N.Y.3d 1108 (2023)); *Sywak v. Grande*, 217 A.D.3d 1382, 1384, 190 N.Y.S.3d 730 (4th Dep't 2023) ("[D]efendants established that plaintiff was not prevented "'from performing substantially all of the material acts which

19

constituted his usual daily activities" for at least 90 out of the 180 days following the accident' (*Cohen v. Broten*, 197 A.D.3d 949, 950, 150 N.Y.S.3d 656 (4th Dep't 2021), quoting *Licari*, 57 N.Y.2d at 238), and plaintiff failed to raise a triable issue of fact in opposition to the motion with respect to the 90/180-day category."); *Omar v. Goodman*, 295 A.D.2d 413, 414, 743 N.Y.S.2d 568, 570 (2d Dep't 2002) (reasoning that the "[c]urtailment of recreational and household activities and an inability to lift heavy packages is insufficient" to establish a "serious injury" under the "90/180 day" category).

### 2. *Causation*

A court can also determine whether the accident caused the plaintiff's injury on a motion for summary judgment. *See Pommells v. Perez*, 4 N.Y.3d 566, 572 (2005) ("[E]ven where there is objective medical proof [of a serious injury], when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate."). To demonstrate that a plaintiff's injuries are related to a pre-existing condition, a defendant must submit "persuasive evidence.'" *Rhone v. United States*, No. 04 CIV. 5037 (PKL), 2007 WL 3340836, at *6 (S.D.N.Y. Nov. 9, 2007) (citing *Arenes v. Mercedes Benz Credit Corp.*, No. 03 Civ. 5810, 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006)). Once again, resolution of disputed issues of fact is a task for the jury, not the court.

Kenan argues that the opinions of Mr. Lynch and Dr. Nobilini establish that "it was not scientifically possible for the plaintiff to have suffered the injuries he alleged" by virtue of the accident. Mem. of L. 14. Kenan cites *Carter v. Full Service, Inc.* and *Holownia v. Caruso* to support this argument. Mem. of L. 14-15.

In *Carter*, the plaintiff had suffered an injury in an accident before the accident at issue and failed either to demonstrate that the latter, rather than the former, caused the injury or to controvert the plaintiff's evidence that the accident in suit caused his injuries. *Carter v. Full Serv., Inc.*, 29 A.D.3d 342, 344, 815 N.Y.S.2d 41 (1st Dep't 2006). "In any event, defendants' medical expert . . . testified that plaintiff's injury could not have been caused by the September 10 accident, since that accident (in which the cab in which plaintiff was riding rear-ended another car, without damage to either vehicle) did not generate sufficient force to cause such an injury—another point not addressed by plaintiff's evidence." *Id.* at 345. The court held that the defendants were entitled to judgment as a matter of law. *Id.*

In *Holowina*, the court determined that "a jury could rationally and fairly conclude that the speed of the tractor trailer was not a proximate cause of the accident and, therefore, Supreme Court appropriately denied plaintiffs' motion for a directed verdict against Page and New Prime." *Holownia v. Caruso*, 183 A.D.3d 1035, 1037, 123 N.Y.S.3d 291 (3d Dep't 2020). Significantly, both of these cases dealt with the issue of causation on post-trial motions; in *Holowina*, the Third Department explicitly deferred to the jury's findings after trial. These cites are of little precedential value on a motion for summary judgment.

Viewing the record in a light most favorable to Mr. Gonzalez, there is a triable issue of fact about whether the accident caused Mr. Gonzalez's injuries. He has claimed that he has no history of medical issues with his neck or back; he cannot stand as long or walk as far as he could before the accident. Affirmation in Opp'n., Ex. B. Additionally, Dr. Lattuga stated, based on Mr. Gonzalez's medical history, objective testing, including the range of motion tests, and the CT scans, that Mr. Gonzalez's injuries are causally related to the May 12, 2022 accident. *Id.* Thus, the Court denies Kenan's motion for summary judgment on the issue of proximate causation. *Contra*

21

*Watson-Tobah v. Royal Moving & Storage, Inc.,* No. 13-CV-7483 KBF, 2014 WL 6865713, at *14 (S.D.N.Y. Dec. 5, 2014) ("Plaintiff's inability to present any competent medical evidence supporting her allegation that her injuries were proximately caused by the [] accident entitles defendants to summary judgment."); *Pommells*, 4 N.Y.3d at 575 ("Plaintiff's submission left wholly unanswered the question whether the claimed symptoms diagnosed by [plaintiff's medical expert] were caused by the accident.").

Kenan also argues that Mr. Gonzalez's injuries constitute a preexisting condition and cites *Kilmer v. Strek* in support. Mem. of L. 15. In *Kilmer*, the court granted the defendant's motion for summary judgment: "Defendant met her burden on the motion by *presenting evidence* establishing that plaintiff's alleged injury preexisted the accident, the accident did not aggravate that injury and surgery was necessitated by the preexisting condition." *Kilmer v. Strek*, 35 A.D.3d 1282, 1283, 827 N.Y.S.2d 808 (4th Dep't 2006) (emphasis added). Conclusory statements by experts alone are insufficient to establish causation or the lack thereof on a motion for summary judgment. *Smith v. Gray*, No. 21-2035-CV, 2022 WL 1418973, at *2 (2d Cir. May 5, 2022). *Contra Conde v. United States*, No. 19 CIV. 8506 (NRB), 2021 WL 3604701, at *9 (S.D.N.Y. Aug. 13, 2021) ("As [Defendant's medical expert] based her Report on medical reports, imaging, a physical exam, and her spinal expertise, [Defendant's medical expert's] Expert Report is sufficient to establish a prima facie case that the accident did not cause plaintiff's potentially serious conditions, and instead resulted from a preexisting, degenerative condition."); *Watson-Toba*, 2014 WL 6865713, at *12 ("Defendants have *submitted extensive and unrebutted evidence* that plaintiff sustained a series of injuries prior to the [] accident.") (emphasis added).

But Kenan did not produce evidence that Mr. Gonzalez had any pre-existing condition. While Dr. Bazos opined that Mr. Gonzalez's injuries were caused by a "pre-existing multi-level

22

degenerative disc disease due to aging," there is sufficient evidence to the contrary so that the issue must go to a jury.

### Conclusion

Kenan's motion is granted to the extent of:

(1) Dismissing the claim for negligent, hiring, training and retention;

(2) Dismissing any claim for recovery of basic economic loss damages; and

(3) Dismissing any claim that Mr. Gonzalez suffered a "serious injury" under the "90/180 day" category.

The motion is otherwise denied. The case will be set for trial this fall.

This constitutes the decision and order of the court. It is a written decision.

Dated: July 17, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

23